IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**GOLF 255, INC., Debtor,**

    **Appellant,**

**v.**

**ROBERT EGGMANN, Trustee in**
**Bankruptcy for Golf 255, Inc.,**

    **Appellee.**                             **Case No. 07-mc-15-DRH**

## MEMORANDUM & ORDER

**HERNDON, District Judge:**

### I. INTRODUCTION & BACKGROUND

Golf 255, Inc. ("Golf 255" or "Debtor"), has filed an Emergency Motion to Stay Pending Appeal, pursuant to Bankruptcy Rule 8005 (Doc. 1). This matter arises from Bankruptcy Case 06-31728, pending in the United States Bankruptcy Court for the Southern District of Illinois, the Honorable Judge Meyers presiding. On October 12, 2006, an involuntary petition under Chapter 11 of the United States Bankruptcy Code was filed against Golf 255 by several of its creditors. The Bankruptcy Court authorized the appointment of Robert Eggman to serve as the Chapter 11 Trustee for the Golf 255 matter. After a lengthy hearing on January 8, 2007, Judge Meyers entered an Order for Relief

against Golf 255 (the Debtor) under Chapter 11, *nunc pro tunc*, dated January 9, 2007.[1]

Golf 255 is a corporation which operates a public golf course, known as Arlington Golf Course. Thus, the major assets comprising the Bankruptcy Estate in this matter are the golf course itself and the club house (the "Property"). There is a considerable lien on the Property and certain other of Golf 255's assets, held by the Bank of Edwardsville (the "Bank"), in the amount of approximately $2,100,000.00. In fact, the Property was the subject of a foreclosure sale, stayed only due to the involuntary petition filed against Golf 255, roughly one hour before the sale was set to commence.

A Motion to Sell Assets of the Estate Free and Clear of Liens and Encumbrances and to Assume and Assign Certain Executory Contracts Pursuant to 11 U.S.C. §§ 363 and 365, was filed by the Trustee on January 19, 2007. In the Motion, the Trustee sought to sell substantially all of Debtor's assets, including the Property, to the Collinsville Area Recreation District ("CARD"), for the purchase price of $5,000,000.00 (hereinafter, the "Sale"). As the Sale is set to close prior to the confirmation of a Chapter 11 reorganization plan and disclosure statement, the Trustee made this Motion pursuant to 11 U.S.C. § 363(b) and (f), used for sale of assets outside the ordinary course of business and free and clear

---

[1] Golf 255 has appealed the Order granting of the petition for the involuntary Chapter 11 bankruptcy. That appeal has been filed with this Court under Case Number 07-cv-135-DRH. Golf 255 also filed a Motion to Stay the Order with the Bankruptcy Court, which was denied.

of liens, claims and encumbrances. This Motion was granted, over objection, by the Bankruptcy Court on February 23, 2007. Debtor also appealed this Order, and filed with the Bankruptcy Court a Motion to Stay the Order Pending Appeal,[2] which was denied on March 1, 2007. The Sale is set to close on March 15, 2007. Thus, upon denial of its Motion to Stay (the Sale) by the Bankruptcy Court, Bankruptcy Rule 8005 permits the Debtor to file an Emergency Motion to Stay Pending Appeal with the District Court.

Due to the pendency of the Sale's closing, a hearing was conducted on March 13, 2007, in which all interested parties who chose to attend were able to argue their positions either favoring or opposing the Sale. Taking these arguments under advisement, this Order sets forth the Court's reasoning why it finds a stay unwarranted.

## II. DISCUSSION

The Court has jurisdiction pursuant to **28 U.S.C. § 158**. Further, the Court reviews the findings of fact of the Bankruptcy Court for clear error, however, conclusions of law are reviewed *de novo*. ***In re Midway Airlines*, 383 F.3d 663, 668 (7th Cir. 2004); FED. R. BANKR. P. 8013**. The ultimate issue the Court must determine is whether a stay of the Sale pending Golf 255's appeal is warranted, which hinges upon the determination of certain sub-issues. The crux

---

[2] Although the appeal has been filed, it will likely not be decided by this Court prior to the closing of the Sale, which would, Debtor argues, serve to render the issues on appeal as moot.

of Golf 255's opposition of the Sale is that it believes it will prevail on its pending appeal, arguing that the Bankruptcy Code does not give the Trustee proper authority to sell substantially all of its assets through a § 363 sale in this case (Doc. 9). Golf 255 believes that allowing the Sale to close without a confirmed plan of reorganization obviates the purpose of the a Chapter 11 bankruptcy – after all, what is the point of reorganizing a golf course business if there is no longer a golf course left to operate?  Both the Trustee and the Bank have filed opposing Responses (Docs. 6 & 7), countering with the assertion that in certain circumstances (such as this case), if the requisite factors are met and approved by the Court, a sale pursuant to § 363 of the Property, prior to obtaining a confirmed reorganization plan, is entirely appropriate and in line with the current state of bankruptcy law.

### A.   Legal Standard

When considering whether to grant a stay pending appeal, pursuant to Bankruptcy Rule 8005, the Court must consider the following: (1) whether the movant is likely to succeed on the merits of the appeal; (2) whether the movant will suffer irreparable injury absent a stay; (3) whether a stay would substantially harm other parties to the litigation; and (4) whether a stay is in the public interest. **In re Forty-Eight Insulations, Inc., 115 F.3d 1294, 1300 (7th Cir. 1997)**. The moving party has the burden of proof. **In re Wire Rope Corp. of America, Inc., 302 B.R. 646, 648 (W.D. Mo. 2003)**. Movant should also make

a "substantial showing of likelihood of success . . . because [movant] must convince the reviewing court that the lower court, after having the benefit of evaluating the relevant evidence, has likely committed reversible error." ***In re Forty-Eight Insulations,*** **115 F.3d at 1301 (citing *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991))**. If movant fails to make this showing or to meet threshold burden that movant will suffer irreparable harm if stay is denied, the Court need not conduct a balance of harms analysis and can deny the stay at that point. ***Id.* (citing *Green Riv. Bottling Co. v. Green Riv. Corp.*, 997 F.2d 359, 361 (7th Cir. 1993); *Abbot Lab. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992))**.

**B.    Elements of a Stay**

    **1.    Likelihood of Success**

Golf 255 has appealed the Bankruptcy Court's Order, authorizing the Sale of the Property pursuant to 11 U.S.C. § 363. Specifically, Golf 255 argues that the Chapter 11 Trustee does not have authority to sell substantially all of its assets prior to a confirmed reorganization plan. Moreover, Golf 255 distinguishes the cases cited by the Trustee in support of his authority to pursue the Sale, under § 363, in that those cases involve the Chapter 11 *debtor in possession* moving to sell the assets – not an appointed trustee (Doc. 9, p. 2). Thus, Golf 255 asserts that the Bankruptcy Code does not specifically give the Chapter 11 Trustee authority to sell substantially all of the assets in the bankruptcy estate

prior to establishing a confirmed reorganization plan. Golf 255 does not offer case law to support its assertion, but instead, looks to the Code itself.[3]

Also looking at the Code, the Court finds convincing the Bank's explanation of Chapter 11 authority (Doc. 7, pp. 7-8). Although Golf 255's observations regarding Chapter 11 duties under § 1106 and § 704 (via incorporation) are true, the Code provides that Chapter 3 is applicable to Chapter 11 bankruptcy cases. **See 11 U.S.C. § 103(a)**. Further, § 363 (part of Chapter 3 of the Code) specifically provides that "[t]he *trustee*, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." **11 U.S.C. § 363(b)(1) (emphasis added)**. Section 363 does not specifically exclude a Chapter 11 trustee from the scope of its use of "trustee," nor does the Court find other sections of the Code that explicitly prohibit a Chapter 11 trustee from acting in accordance with the provisions of Chapter 3 of the Code.

---

[3] Golf 255 looks to 11 U.S.C. § 1106, which enumerates the duties of the Chapter 11 trustee – stating specifically:

    (a) A trustee shall--
        (1)    perform the duties of the trustee, as specified in paragraphs (2), (5), (7), (8), (9), (10), (11), and (12) of section 704;

Further, Golf 255 notes that what is *not* included as part of the Trustee's duties incorporated via section 704 is paragraph (1) of 704, which requires a Chapter 7 trustee to:

    (1)    collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;

Therefore, because this Chapter 7 trustee duty specifically *not* incorporated into the Chapter 11 trustee's duties, Golf 255 believes that allowing a Chapter 11 trustee to sell substantially all of the assets under § 363 would directly contravene § 1106.

The Court is thus satisfied that it was proper for the Trustee to move for approval of the Sale pursuant to § 363.  Having determined § 363 was the proper procedural vehicle for the Trustee to seek authorization for the Sale, the Court must now determine whether Golf 255 would likely succeed on its appeal that the Bankruptcy Court incorrectly determined the requisite elements were met in order to approve the Sale pursuant to § 363.

In order to approve a sale of substantially all of the assets of the Chapter 11 bankruptcy estate pursuant to § 363(b)(1), prior to filing a plan and disclosure statement, the Court must closely scrutinize to find the following elements were properly met.  This is commonly known as the "sound business test":

(1) Accurate and reasonable prior notice must be given to all creditors and parties in interest;

(2) A sound business purpose for the sale must be clearly established by the record;

(3) The purchase price must be fair and reasonable; and

(4) The proponent must show that the sale will not unfairly benefit insiders or the prospective purchasers, or unfairly favor a creditor or class of creditors.

*See In re Titusville Country Club*, 128 B.R. 396, 399 (W.D. Pa. 1991); *In re Channel One Communications, Inc.*, 117 B.R. 493, 496 (E.D. Mo. 1990); *In re Engineering Products Co., Inc.*, 121 B.R. 246, 247-48 (E.D. Wis. 1990)(citing *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Abbotts Dairies Pa., Inc.*, 788 F.2d 143, 146 (3d Cir. 1986); *Stephens Industries, Inc. v. McClung*, 789 F.2d 386, 289-90 (6th Cir. 1986)).

Additionally, if the contemplated sale under § 363(b)(1) is to be "free and clear of any interest in such property of an entity other than the estate," the purchase price must be "greater than the aggregate value of all liens on such property." **11 U.S.C. § 363(f)(3)**.

### a. Accurate and Reasonable Notice

The Bankruptcy Court, in its February 23, 2007 Order, found that the Trustee gave accurate and reasonable notice to all creditors and parties in interest. Facts supporting the Bankruptcy Court's finding were that the Trustee provided notice to all creditors and other parties in interest, via ordinary mail, of his intent to consummate the Sale.[4] Further, the Trustee contacted various operators of golf courses in reasonable proximity to Arlington golf course, regarding the Sale and provided them with a copy of the notice in case anyone wished to make a competing bid on the Property. Lastly, the Trustee published notice of the Sale in the *Belleville News Democrat*, the local newspaper. The Court thereby agrees, finding that the Trustee's actions establish that reasonable and accurate notice of the pending Sale was given to all creditors and parties in interest.

---

[4] The Trustee notes in his Response (Doc. 6, p. 5) that Golf 255 does not challenge that notice was not properly given.

### b. Sound Business Purpose

Sound business reasons supporting allowing the Sale were found to exist, as stated in the Bankruptcy Court's Order. Recognizing that there was not yet a reorganization plan and disclosure statement, the Bankruptcy Court nevertheless deemed the Sale of the Property necessary due to "exigent circumstances." The Bankruptcy Court's supporting findings of fact were as follows: (1) CARD had been negotiating with Golf 255 for the purchase of the Property, during the Chapter 11 proceeding; (2) the primary motivation for CARD in purchasing the Property is to consummate the Sale prior to the beginning of this year's golfing season; (3) CARD, as an Illinois Park District, can guarantee proper funding for purchasing the Property, if the Sale is consummated shortly (as its funding is based upon its projected budget, which, in turn, bases its operations of the Arlington golf course beginning this spring); (4) the Property was subject to a foreclosure sale immediately prior to the filing of the involuntary Chapter 11 petition (noting that if the sale is not approved and the Bank is granted relief from the stay, the resulting foreclosure will result in the loss of substantial equity in the property for the benefit of the estate's creditors, as the Bank is no longer willing to fund Golf 255's future endeavors); (5) Golf 255's most recent tax returns show substantial losses for the years 2003 and 2004, signifying it is unlikely to begin operating in a profitable manner should the Sale not be approved; and (6) testimony regarding possible funding by the shareholder, via future residential development of the Property, in lieu of the Sale proceeds, was

not credible nor was such residential development feasible, given the unfavorable geological characteristics of the Property. Moreover, Golf 255's initial Motion to Stay was denied by the Bankruptcy Court, finding that "it is imperative for the [S]ale to proceed as scheduled due to a risk of losing a ready and willing buyer whose purchase of debtor's assets will result in a substantial distribution to creditors."

Reviewing the Bankruptcy Court's findings of fact regarding whether there is sound business purpose in authorizing the Sale and after taking into account the parties' arguments at the hearing, the Court also deems the Trustee's decision to seek approval of the Sale of the Property reflects sound business purpose, given the circumstances. The Court also observes that this is not the first instance a § 363 sale of a golf course subject to a Chapter 11 bankruptcy has been approved, serving to further bolster the Court's finding. **See In re North Port Assoc., Inc., 184 B.R. 789 (E.D. Mo. 1995)(court found sale of golf course proper under § 363, but prospective buyer subsequently moved for rescission, due to fact that debtors failed and refused to deliver the deed); In re Titusville Country Club, 128 B.R. 128 B.R. 396, 397 (W.D. Pa. 1991)(although the sale of the golf course was initiated by the debtor in possession, instead of a trustee, in this Chapter 11 bankruptcy, it was approved pursuant to § 363, as the proponent argued for an expedited sale**

**"due to the seasonal nature of the business and the necessity of completing the sale before too much of the golfing season elapsed")**.

### c. Fair and Reasonable Purchase Price

The Trustee and CARD agreed upon a purchase price of $5 million dollars, to be sold free and clear of all liens. The Bankruptcy Court found this purchase price to be fair and reasonable. Further, in accordance with § 363(f), the price of $5 million will provide enough funding to the bankruptcy estate to allow for full or substantial payment to Golf 255's creditors. Further substantiating findings of fact from the Bankruptcy Court were: (1) CARD negotiated the terms of the Sale at arm's length with Golf 255 prior to the bankruptcy and with the Trustee after the petition was filed; (2) there was ample opportunity for another party interested in the Property to make a better offer for purchase, but no offers were made; (3) Golf 255 had been operating at a substantial loss; and (4) the chances for Golf 255 to continue to operate the Property while satisfying its creditors was not likely. Again, the Court agrees, finding that purchase price of $5 million offered by CARD for the Property is fair and reasonable, as there has been no credible evidence to support a contrary assertion.

### d. Sale Does Not Unfairly Benefit

The Bankruptcy Court found the last requisite element of § 363 was met and the Sale will not unfairly benefit insiders or the prospective purchaser or unfairly favor a creditor or class of creditors. The following findings of fact were made in order to support its finding: (1) the purchase price would be enough to substantially satisfy the creditors and possibly result in some distribution to shareholders; (2) the Sale contract does not call for employment of insiders nor any consulting agreements with insiders; and (3) the purchase price constitutes a fair market valuation. As nothing has been presented to oppose these facts, the Court also finds that the last element of § 363 has been fulfilled.

As the Court has not deemed any of the findings of fact by the Bankruptcy Court to have been made in clear error and because it also concludes that the elements of § 363 have been met to allow the Sale to proceed, Golf 255's chances of prevailing on the merits of its appeal are therefore slim to none. In other words, Golf 255 has failed to make a substantial (or even threshold) showing of likelihood of success as required by Rule 8005 for its Emergency Motion to Stay Pending Appeal. Next, the Court must determine whether Golf 255 makes a requisite showing of irreparable injury in order to warrant a stay.

### 2. Irreparable Injury Absent a Stay

Golf 255's argument that it will suffer irreparable injury from the Sale, absent a stay, is that allowing the Sale to proceed would effectively moot

Golf 255's appeal (Doc. 9, p. 2, citing **In re Advance Mining Sys., Inc., 173 B.R. 467 (S.D. N.Y. 1994)** for proposition that "denial of a stay pending appeal would moot the appeal" and prove to be "the quintessential form of irreparable harm").  The Bankruptcy Court previously found that more irreparable harm to the bankruptcy estate would occur if the Sale was not approved because an equivalent or better offer may never be made for the Property.  The Bankruptcy Court found no evidence to indicate Golf 255 could, pursuant to a reorganization plan, operate the business at a profit in order to satisfy its creditors in an amount greater than what could be gained from the proceeds of the Sale.

True, as Golf 255 explains, the sale all of its assets will render as moot the need for a reorganization, as it amounts to a de facto liquidation.  This severe outcome is exactly why approval of a § 363 sale is subjected to close judicial scrutiny and the good business purpose test.  Often, approval only comes in situations were the assets are perishable or there is some other temporally dependent factor upon which the sale hinges.  **See In re Titusville Country Club, 128 B.R. at 399 (discussing generally the previous "emergency" requirement for a Chapter 11 sale of all assets without the benefit of a confirmed plan)**.  Such is the nature of this case – the parties fear CARD may not be able or willing to make the same offer at a later date, if the stay is granted.  Additionally, it was submitted at the hearing that operating a profitable golf course primarily depends upon obtaining weekday league-play; leagues are

unlikely to solicit Arlington golf course if it ceases operation or if they still believe it is subject to a bankruptcy.  Therefore, due to CARD's financing window as well as the seasonal need to commence operations in early springtime of this year, the Court finds that such exceptional circumstances warrant the sale, even while taking into consideration the problematic result for Golf 255.  Agreeing with the Bankruptcy Court, Golf 255 has not provided any credible information to conceive that a stay would ultimately produce even half as favorable of an outcome for the bankruptcy estate and its creditors as the Sale will offer.

Due to the findings and rationale discussed herein, the Court finds Golf 255 has failed to meet a threshold (or substantial) showing of likelihood of success on the merits or irreparable injury absent a stay, under Rule 8005, to warrant a stay of the Sale pending appeal.  In accordance with the Seventh Circuit in **In re Forty-Eight Insulations**, the Court need not, therefore, inquire into the balance of harms under Rule 8005.[5]

---

[5] However, for the benefit of the parties and possible future litigation, the Court notes that the record supports a finding that a stay would cause substantial harm to other parties in the litigation (the creditors) and would not be in the public interest.

### III.  CONCLUSION

The Court finds that under Bankruptcy Rule 8005, a stay of the Sale is not warranted and must therefore **DENY** Golf 255's Emergency Motion to Stay Pending Appeal (Doc. 1).  Accordingly, the Sale of the Property to CARD shall proceed as intended by the Trustee, with closing, as indicated by the parties, set for March 15, 2007.

**IT IS SO ORDERED**.

Signed this 14th day of March, 2007.

/s/        David  RHerndon
**United States District Judge**